IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-96-225-1 |
| | § | |
| RONALD WAYNE SAPP, | § | |
| | § | |
| Defendant-Movant | § | |

## MEMORANDUM AND RECOMMENDATION

Before the Magistrate Judge upon referral from the District Judge is Movant Ronald Wayne Sapp's Motion for Relief from Judgment or for Other Extraordinary Relief (Document No. 45), and Motion to Expedite Ruling on Rule 60(b) Motion (Document No. 55), the United States' Response to Movant's Motion (Document No. 50) and Motion to Dismiss (Document No. 51), and Movant's Response to the United States' Motion to Dismiss (Document No. 53). After reviewing the pending motions and responses thereto, the record of the proceedings before the District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that a new sentencing hearing be held and that Movant Ronald Wayne Sapp be appointed counsel to assist him in the sentencing hearing.

## I. Procedural History

Movant Ronald Wayne Sapp ("Sapp"), who is currently in the custody of the United States Bureau of Prisons, is seeking relief under Rule 60(b) of the Federal Rules of Civil Procedure for Relief from Judgment or for Other Extraordinary Relief. This is Sapp's second attempt at the relief he has requested.

On October 30, 1996, Sapp was charged by Indictment with three counts of felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Counts One, Three and Four) and with making a false statement in connection with the purchase of firearm in violation of 18 U.S.C.      § 922(a)(6) (Count Two).  (Document No. 1).  At the time the Indictment was returned in October 1996, Sapp was serving a twenty-five year sentence for burglary in the Texas Department of Corrections.  On  January 31, 1997, Sapp, pursuant to a written Plea Agreement,  pleaded guilty to Count One of the Indictment.  (Document No. 17, 18 and Transcript of Rearraignment Hearing, Document No. 34).  Under the written Plea Agreement, Sapp agreed to plead guilty to Count One and the Government agreed to dismiss Counts Two, Three and Four at sentencing.  (Document No. 18, ¶ 1, 2 and Transcript of Rearraignment, Document No. 34, p. 4-5).  With respect to the calculation of Sapp's sentence, the written plea agreement provided in pertinent part:

> 8.  The defendant understands that the sentence to be imposed is within the discretion of the sentencing judge.  If the Court should impose any sentence up to the maximum established by statute, the defendant cannot, for that reason alone, withdraw a guilty plea and will remain bound to fulfill all of the obligations under this plea agreement.

> 9.   The defendant is aware that the defendant's sentence will be imposed in accordance with the Sentencing Guidelines and Policy Statements.  The defendant nonetheless acknowledges and agrees that this Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense(s) to which the defendant pleads guilty.  The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed.  Knowing that, the defendant waives the right to appeal the sentence or the manner in which it was determined on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, except for an upward departure.  This agreement does not affect the rights or obligations of the United States as set forth in Title 18, United States Code, Section 3742(b).

> 10.  In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office,

is a prediction, not a promise, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the defendant knowingly waives the right to appeal the sentence in exchange for the concessions made by the United States in this plea agreement. (Document No.18).

As to the factual basis of the plea, the written Plea Agreement states:

16. Defendant will plead guilty because he is in fact guilty. In pleading guilty to this charge, defendant acknowledges the facts as stated below are true, and were the case to go to trial, the government would be able to prove those facts beyond a reasonable doubt. The parties further agree, however, that this factual basis does not include all relevant conduct that may be considered by the Court for sentencing purposes.

<u>Factual Summary</u>

Defendant Ronald Wayne Sapp has been convicted of the following offenses:

**2/10/78** Burglary of a Motor Vehicle with Intent to Commit Theft, cause no. 270196, Harris County, TX.

**8/24/79** Seven separate counts of Robbery, cause no. 299401, Harris Co., TX.

**01/20/88** Burglary of a Habitation, cause nos. 479297 & 484789, Harris Co., TX.

**3/24/88** Burglary of a Habitation, cause no. 5884, Harris Co., Tx.

Each of the above-listed crimes is punishable by imprisonment in excess of one year.

On September 15, 1995, Special Agent Gilbert Bartosh of the Bureau of Alcohol, Tobacco and Firearms received a referral of information from the Compliance Division of the Bureau of Alcohol, Tobacco & Firearms, Houston, Texas, referencing a firearms compliance inspection that had been conducted at All Pawn #2, 121 West 1st Street, Humble, Texas, from August 7, 1995 through August 10, 1995.

A review of an AFT Form 4473, number 20074, revealed that Ronald Wayne Sapp, date of birth, November 2, 1956, residing at 2037 Creekwood, Splendora, Texas, received and possessed a Smith and Wesson, Model 60, .38 special caliber revolver, serial number 336900 on March 21, 1995.

3

Records show that Ronald Wayne Sapp, using a Texas Driver's license illegally possessed and pawned the firearm above on September 22, 1994.

Irene Sapp stated that the defendant possessed the firearm in September of 1994.

David Hinson, Assistant Manger of All Pawn #2 in Humble, Texas conducted a firearm transaction with Ronald Sapp on March 21, 1994.

Smith and Wesson revolver, Model 60, .38 caliber is not manufactured in Texas and therefore must have traveled in interstate commerce to arrive in the state of Texas.

On October 30, 1995, Special Agent Gilbert Bartosh obtained a federal search warrant for the residence of 2037 Creekwood, Splendora, Texas.  On November 1, 1995, the search warrant was executed and the Smith and Wesson .38 caliber revolver was found.  (Document No. 18).

At Sapp's January 31, 1997, Rearraignment, the Court engaged in an extended colloquy with Sapp to ensure that he had read the written Plea Agreement and had conferred with his attorney about the contents of the Plea Agreement.  The Court also advised Sapp of the consequences of his plea, including the maximum sentence he faced, the manner in which his sentence would be calculated, the factual basis of the plea, and the waiver provisions.  Also, in response to the question concerning whether he was under the influence of any drug or medication or alcohol, Sapp replied: "No, ma'am, I'm incarcerated in TDC right now."  (Transcript of Rearraignment, Document No. 34, p. 6).  With respect to the maximum penalties, Sapp was advised as follows by Judge Harmon:

The Court:  And an enhancement has been filed under Section 924(e), which would give a sentence of a minimum mandatory 15 years of imprisonment and up to life imprisonment, and it will also be supervised release not to exceed three years, and along with that supervised release, there will also be conditions of supervised release, and if you fail to follow those, you could be put back in prison for some term that would be not more than the term of the supervised release; do you understand that?

The Defendant:  Yes.

\*                                                  \*

The Court:  And do you understand that if the sentence that I determine based on the guidelines is more severe than you had anticipated that you will not be given an opportunity to withdraw your plea in this case; do you understand that?

The Defendant:  Yes.

                           *                                                  *

The Court:  Do you also understand that under some circumstances, you or the government would have the right to appeal any sentence that I have imposed; do you understand that?

The Defendant:  Yes, ma'am.

The Court:  Does this plea agreement have any reference to a waiver of appeal?

Mr. Cobe:  Yes, it does.

The Court:  It does?  Can you just give me –

Mr. Cobe:  He's waiving his appeal unless there is an upward departure.

The Court:  So, do you understand that by signing the plea agreement, pleading guilty in this case, that you will have waived your right to appeal this sentence, unless I upwardly depart; do you understand that?

The Defendant:  Yes, I do.

                           *                                                  *

The Court:  Tell me in [your] own words what it is you did.

The Defendant:  Pawned a gun and brought it to my father, which I knew it was illegal to do, but I didn't know it was severe form of punishment.  What more can I say, your Honor.

The Court:  Illegal, not to pawn it but to have it, to possess it.

The Defendant:  Correct.

The Court:  Because you have been convicted of a felony before.

The Defendant:  Right. (Document No. 34, pp. 8-11. 15-16).

Prior to sentencing, a pre-sentence investigation report ("PSR") was prepared. (Document No. 21). Pursuant to the PSR, Sapp's guideline sentencing range was calculated as follows: (1) Sapp had a base offense level of 24. (2) However, because Sapp's criminal history included at least three prior felony convictions, and because the instant offense was a conviction under 18 U.S.C. § 922(g), Sapp was deemed an armed career criminal under U.S.S.G. § 4B1.4, and as such his offense level was adjusted to 33. (3) Because Sapp accepted responsibility and did so in a timely manner, pursuant to U.S.S.G. § 3E1.1(a) and (b), his offense level was reduced by three levels. (4) With an adjusted offense level of 30, and with a criminal history category of VI, Sapp had a guideline range of imprisonment of 168 to 210 months. In particular, the PSR states:

> 48. Pursuant to U.S.S.G. § 5A1.1, based on a total offense level of 30 and a criminal history category of VI, the guideline range for imprisonment is 168 to 210 months. However, due to the enhanced penalty provisions of 18 U.S.C. § 924(e), the guideline range is 180 months to 210 months. **Pursuant to U.S.S.G. § 5G1.3(b), since the undischarged sentence for Burglary of a Habitation was taken into account for the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment**. (Document No. 21)(emphasis added).

On May 16, 1997, Sapp was sentenced to a term of imprisonment of 180 months, to be followed by a 3 year term of supervised, a $15,000 fine, and a $50 special assessment. (Document No. 24, Transcript of Sentencing, Document No. 32, pp. 6-7). With respect to his sentence, Judge Harmon stated:

> The Court: Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Ronald Wayne Sapp, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 180 months. I'm giving Mr. Sapp the low end of the guidelines because I think that's a very heavy sentence in and of itself and not because — I think definitely needs to be punished and I'm not doing it because of the drug problems, but just simply because I think that's quite a heavy sentence and there's no point in being more and more time. (Transcript of Sentencing, Document No. 32, p. 6).

6

With respect to the interplay between Sapp's previously imposed state sentence that he was currently

serving and his federal sentence, Judge Harmon stated:

> The Probation Officer:  Is the Court going to order this sentence to run concurrently with the other term of imprisonment and will the Court order drug treatment as a condition of supervised release?
>
> The Court:  Yes, I will order drug treatment as a condition of supervised release.  I'm not certain about whether I can order concurrently.  Can I do that?
>
> The Probation Officer:  Yes.
>
> Ms. Young:  Yes, your Honor.
>
> The Probation Officer:  If I may refer you to the sentencing options in paragraph 48, your Honor, under 5G1.3.
>
> The Court:  Do you all have any position on that?
>
> Ms. Young:  Had he not stood up, that was going to be my request, that he be run concurrent.
>
> The Court:  I will impose this sentence to run concurrent with the sentence that he's serving at the state court system.  (Transcript of Sentencing, Document No. 32, p. 8).

Judgment was entered on May 21, 1997.  (Document No. 27).  The Judgment states:

> The term consists of ONE HUNDRED EIGHTY (180) MONTHS as to Count 1 to run concurrently with the undischarged term of imprisonment imposed for his conviction in Cause No. 8223.  (Document No. 27).

At the time Sapp was sentenced, §5G1.3(b), which was referenced in the PSR, and by the Probation

Officer at Sapp's sentencing hearing, provided in pertinent part:

> (b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(a), (a)(2), or (a)(3) of § 1B1.3 (Relevant Conduct) and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2)  the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

In addition, Application Note 2 provided further illumination concerning this section:

(C)  <u>Imposition of Sentence</u> – If subsection (b) applies, and the court adjusts the sentence for a period of time already served, the court should note on the Judgment in a Criminal Case Order (i) the applicable subsection (e.g., § 5G1.3(b); (ii) the amount of time by which the sentence is being adjusted; (iii) the undischarged term of imprisonment for which the adjustment is being given; and (iv) that the sentence imposed is a sentence reduction pursuant to § 5G1.3(b) for a period of imprisonment that will not be credited by the Bureau of Prisons.

(D)  <u>Example</u> – The following is an example in which subsection (b) applies and an adjustment to the sentence is appropriate:
The defendant is convicted of a federal offense charging the sale of 40 grams of cocaine. Under § 1B1.2, the defendant is held accountable for the sale of an additional 15 grams of cocaine, an offense for which the defendant has been convicted and sentenced in state court.   The defendant received a nine-month sentence of imprisonment for the state offense and has served six months on that sentence at the time of sentencing on the instant federal offense.   The guideline range applicable to the defendant is 12-18 months (Chapter Two offense level of level 16 for sale of 55 grams of cocaine; 3 level reduction for acceptance of responsibility; final offense level of level 13; Criminal History Category I).   The court determines that a sentence of 13 months provides the appropriate total punishment.   Because the defendant has already served six months on the related state charge as of the date of sentencing on the instant federal offense, a sentence of seven months, imposed to run concurrently with the three months remaining on the defendant's state sentence, achieves this result.

Sapp appealed his conviction to the Fifth Circuit Court of Appeals.  (Document No. 28).  The Fifth

Circuit, unpersuaded by Sapp's argument that the federal government could not, consistent with the

Interstate Commerce Clause, the Tenth Amendment, and in the wake of *United States v. Lopez*, 514

U.S. 549, 567-68 (1995), punish a felon's mere possession of a firearm that had traveled in interstate

commerce at some point of time because the past possession lacked a sufficient nexus with interstate commerce, affirmed Sapp's conviction in an opinion filed on February 25, 1998. (Document No. 36, 37). Sapp filed a petition for writ of certiorari with the Supreme Court. The petition was denied on July 20, 1998. (Document No. 38). As such, Sapp's judgment and conviction became final on or about July 20, 1998, for purposes of his original underlying conviction.

In May 2004, Sapp was released on parole by the State of Texas, having served approximately nine years in state custody. (Document No. 45, p. 3). Because of Sapp's federal conviction in the instant action, he was released to federal custody. The docket sheet reveals that on December 21, 2004, Sapp filed a Motion for Pre-Sentence Credit Pursuant to U.S.S.G. Section 5G1.3, Application Note 2 (Document No. 41), in which Sapp requested that the Court, pursuant to U.S.S.G. § 5G1.3 adjust his sentence by twenty-four (24) months, approximately the period from May 10, 1995, (the day of Sapp's arrest for the state offense), to May 16, 1997 (the date his federal term began). According to Sapp, had his Judgment and Commitment Order conformed with the requirements of § U.S.S.G. 5G1.3 and Application Note 2 thereto, he should have been sentenced to 156 months, which would have reflected the time served prior to federal sentencing (Sapp's actual sentence of 180 months less 24 months). In this motion, Sapp wrote that the Bureau of Prisons, relying on 18 U.S.C. § 3584, had allowed him no pre-sentence credit for the time spent in state custody, notwithstanding the Court's Judgment which indicated that his federal sentence was to run concurrent to his state sentence, and he attached as Exhibit B, the sentence computation data sheet that had been provided him by the Bureau of Prisons. In response to Sapp's motion, the Government argued that Sapp was not entitled to any relief because Sapp had failed to show that his state conviction had any connection to the federal offense for which he wanted credit. The Government further argued that simply

because the state conviction was considered in determining the criminal history portion of the calculations under the sentencing guidelines, Sapp was not entitled to credit for time served for a conviction in a state case that was unrelated to his federal conviction. (Document No. 42, p. 2). The Court, relying on the Government's arguments, denied Sapp's motion. (Document No. 43).

> Thereafter, Sapp filed the instant motion (Document No. 45). Sapp writes:

> The Court did run the term concurrent, but because no one spoke up at the sentencing hearing including the Movant's attorney or the probation officer, this Court did not sentence Movant in accordance with § 5G1.3(b). (Document No. 45, p. 2).

Sapp contends that he was not aware that the Bureau of Prisons would not give him credit until he was officially released into federal custody, was classified by his unit team and was given a sentencing computation print out sheet. According to Sapp, he has been diligent in seeking relief. Sapp further acknowledges that his earlier motion should have been brought under § 2255[1], and as such, brings the instant motion under Fed.R.Civ.P. 60(b) to correct a defect in the integrity of the judicial proceedings. According to Sapp, the instant motion should not be construed as a successive § 2255 motion because the relief requested is appropriate under Rule 60(b). According to Sapp, the instant motion raises no new claims for relief, no new evidence or new law is relied upon to support an old claim, and he is not relying on a change in substantive law. Sapp does not argue that the court erred in the computation of his sentence or in its application of the guidelines. The Government has responded to Sapp's motion and does not dispute the factual assertions that Sapp has made concerning his sentence. Indeed, the Government, in its Response, writes:

---

[1] Because Sapp seeks credit pursuant to U.S.S.G. § 5G1.3(b) based on an alleged error that occurred at sentencing, his motion should be brought under 28 U.S.C. § 2255. *Falcetta v. United States*, 155 Fed.Appx. 762 (5th Cir. Nov. 22, 3005), *cert. denied*, ___U.S. ___, 127 S.Ct. 254 (2006); *Smith v. United States*, 31 Fed. Appx. 155 (5th Cir. Dec. 12, 2001). .

As Sapp adequately asserts in both his original "Motion for Presentence Credit" and the current Motion for Relief from Judgment, the Federal Sentencing Guidelines in place on the date of his sentencing required a lesser sentence than the one Sapp ultimately received....The past convictions taken into account included Sapp's state burglary conviction for which he was then serving a prison sentence.  Therefore, the Court ordered Sapp's federal sentence to run fully concurrent with his state sentence, in accordance with Federal Sentencing Guideline § 5G1.3(b) (S.Tr.,p. 8). Thus, the record indicates that this Court intended to give Sapp credit towards his federal sentence for any time he served for his state burglary charge.

However, none of the parties present at the sentencing hearing alerted this Court to Application Note 2 of § 5G1.3.  That provision compelled the sentencing court to reduce the defendant's concurrent federal sentence by the two years served for the conviction taken into account, if it determined that the Bureau of Prisons would not award the time served.  U.S.S.G. § 5G1.3, Application Note 2 (1995).  The record indicates that this Court made no such determination.  However, it is clear that the Bureau of Prisons does not award presentence credit for concurrent sentences, thus necessitating a provision such as § 5G1.3.  Sapp's Sentence Computation Sheet indicates that the Bureau began his credit for federal time served — not at the beginning of this state sentence that was taken into account by this Court (in May 1995) – but only after this Court sentenced Sapp (in May 1997) (Document. 45, p. 18)).  It is normally up to the sentencing court to make the appropriate reduction in the defendant's sentence in order to give him credit for presentence time served.  In Sapp's case, he had already served 24 months of his state burglary conviction when this Court imposed his concurrent federal sentence of 180 months.  Because the Guidelines at the time required the Court to reduce his finally calculated sentence by whatever time Sapp had already served, it appears that the Court should have sentenced Sapp to 156 months, rather than depend on the Bureau of Prisons to award this time served.  *See United States v. White*, 354 F.3d 841 (8th Cir. 2004) (remanding on issue of sentencing after district court erroneously assumed that determination of whether to credit for time already served rested with Bureau of Prisons).  This would also have been permissible under the enhanced penalty provisions of 18 U.S.C. § 924(e), as Sapp's total concurrent sentence would have been 180 months.

\*                                          \*

The record of Sapp's case reveals that his current prison sentence is 24 months longer than this Court intended to impose under the Federal Sentencing Guidelines....

\*                              \*

Sapp's case if factually unique.  Unlike many procedurally flawed § 2255 claims, he does not present a situation where the Court is alleged to have miscalculated or

11

decided on a sentence that the defendant did not deserve for whatever reasons. Instead, Sapp asserts that this Court decided his sentence correctly, yet overlooked a key provision of the Federal Sentencing Guidelines that would conform that sentence to the Court's intent.  In overlooking the provision and not adjusting Sapp's sentence to account for time already served, the Court assured that Sapp would serve two more years of prison time, than it appears the Court intended, when it imposed a fully concurrent sentence.  This claim appears factually correct.

So that justice may be served, it is the government's position that this Court should weigh competing factors in arriving at a decision in this case.  On one hand, fairness and the dignity of the petitioner argue that he should serve a sentence no longer than what the Court intended to impose.  On the other hand, equal application of our procedural laws argue in favor of holding Sapp accountable for his failure to make his current claim at various stages of the sentencing and direct review phases.  If this Court finds that applying procedural barriers to Sapp's claim would result in injustice, the Government does not oppose providing Sapp relief in a re-sentencing hearing. This would be legally permissible if the Court finds that Sapp's motion is not a second or successive § 2255 motion, thus circumventing the § 2255 bar pertaining to appellate authorization, procedural default and the one-year limitation.  Thus, such a finding would vest the Court with jurisdiction to hear Sapp's claim and grant him relief under Federal Rule of Civil Procedure 60(b)(6).  If, however, this Court finds it unjust to allow Sapp to escape the consequences of his clear procedural flaws, it should dismiss Sapp's current motion for the reasons outlined in this response. (Document Nos. 50 & 51, pp. 8-10, 11, 18-20).

Here, upon this record, even though Sapp's motion is one that is properly brought under § 2255, given that the Government did not object to Sapp's first motion on this ground and given that Sapp was not advised about the consequences of his motion being construed as a § 2255 motion, namely, that based on this characterization, pursuant to *Castro v. United States*, 540 U.S. 375 (2003), that:  (1) his motion had been construed as a Motion to Vacate, Set Aside or Correct Sentence; (2) as a result of this characterization, should Sapp later seek to assert additional claims under § 2255, any subsequently filed motions would be construed as successive before the district court, and he would be required to seek, and acquire approval from the Fifth Circuit Court of Appeals to pursue a successive § 2255 motion, Sapp is not precluded from bringing his claim under Rule 60(b)(6).

Sapp seeks relief under Fed.R.Civ.P. 60(b), which provides for relief from final judgment. The six bases for relief under Rule 60(b) are: "(1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud, misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment." Here, Sapp argues that he is entitled to relief based on Rule 60(b)(6). In *Gonzalez v. Crosby*, 125 S.Ct. 2541 (2005), the Supreme Court held that Rule 60(b) "allows a party to seek relief from a final judgment, and request reopening of his case under a limited set of circumstances." *Id.* at 528. Under Rule 60(b)(6), a movant must show "extraordinary circumstances" to justify reopening of his final judgment. *Gonzalez*, 545 U.S. at 535. In *Gonzalez*, the Court held that a Rule 60(b) motion is not the equivalent of a successive § 2255 motion if the Rule 60(b) motion attacks some defect in the integrity of the federal habeas proceedings, and does not attack the substance of the federal court's resolution of a claim on the merits. Here, because Sapp attacks a defect in the integrity of the federal habeas proceeding, he has shown extraordinary circumstances which would justify the reopening of his final judgment and Sapp's motion should be construed as a "true" Rule 60(b) motion and not a successive motion under § 2255. Sapp makes no claim that his sentence was calculated incorrectly, he has raised no new claim for relief or new legal theory. The record supports Sapp's contention that at the time of Sapp's sentencing, *none* of the parties present were aware of Application Note 2's adjustment requirement, and as a result, his Judgment and Commitment Order failed conform to the requirements of U.S.S.G. 5G1.3, and as a

13

consequence, Sapp was not credited with the two years of his state sentence he had already served, and Sapp's sentence was 24 months longer than was intended by the Court, as evidenced by ¶ 48 of the PSR that stated that U.S.S.G. § 5G1.3(b) applies, and by the transcript of the sentencing hearing. Accordingly, in order to correct a defect in the integrity of the proceedings, the undersigned Magistrate Judge recommends that a re-sentencing hearing held.

## II. Conclusion and Recommendation

Based on the foregoing, and the conclusion that  Sapp is entitled to a re-sentencing hearing, it is

RECOMMENDED that Movant's Motion For Relief from Judgment or for Other Extraordinary Relief (Document No. 45) be GRANTED.  It is further recommended that Sapp be appointed counsel for re-sentencing.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.  Within 10 days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed.R.Civ.P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this  24th day of October, 2008.


Frances H. Stacy
United States Magistrate Judge